KLIEBERT, Judge.
Plaintiff-appellant, Armor Research Company manufactures and distributes industrial chemicals, cleaners, lubricants, solvents and disinfectants. Keith Mesarvey, formerly a sales supervisor for Hill Chemical Company, was hired by Armor to recruit experienced sales personnel. Mesar-vey submitted the name of defendant-ap-pellee, William Thomaston, as a $150,000.00 a year salesman, then representing Chemical World, but on the verge of going to *545 work for Hill Chemical Company, who might be interested in representing Armor. Thomaston, at the inducement of Stacy Weiss, the President of Armor, withheld signing an employment agreement with Hill Chemical until he could discuss employment by Armor with Weiss.
On November 11, 1987, Weiss met with Thomaston in LaPlace, La. At the time of the meeting, Thomaston had an unexecuted employment agreement submitted by Hill, a $5,000.00 check representing up-front money, and a $1,000.00 per week draw against commissions. Weiss offered to pay him $6,000.00 up-front money plus $800.00 per week (subsequently changed to $1,600.00 bi-monthly) against commissions, and to pay his car note. Thomaston testified that he accepted Weiss’ offer and from that day, i.e., November 11, 1987, considered himself employed by Armor.
The contract papers, the $6,000.00 upfront or bonus money check and a form relating to the $6,000.00 up-front money were executed by both parties as of November 23, 1987. After receiving the order books, for the last week of November and the month of December, Thomaston reported $11,000.00 of sales to Armor. According to his testimony, Thomaston became ill with a flu and bronchitis infection for which he was treated at Oehsner and as a result could not work for the last two weeks of December 1987 and the first two weeks of January 1988. On January 26, 1988, less than eight weeks after the employment, of which, for four (4) weeks Tho-maston was seriously ill, Armor terminated the agreement with Thomaston.
In April 1988 Armor filed a petition against Thomaston entitled “Suit on Note” seeking to recover $6,764.80[1] with interest and attorney fees. The basis for the claim was the alleged loan agreement attached hereto as Appendix A. Thomaston reconvened, alleging that Armor had failed to pay his bi-weekly advances, or his car note as agreed upon on November 11, 1987, and had “... cut off all monies to the defendant and all payments ...” in violation of its agreement.
In his reasons for judgment the trial judge said:
“Defendant, Plaintiff in Reconvention was in fact hired by Armor from a secure job and the Court finds that Plaintiff paid an employment bonus of $6,000.00 to obtain Mr. Thomaston [’s] skills and experience. The Court finds Plaintiffs document was not intended to be a promissory note (as evidenced by the forgiveness provisions).
The parties are both experienced marketing experts who attempted to increase each other’s income potential. The mixture did not work and for this reason employment was terminated. The Re-conventional Demands by Defendant’s is also dismissed for said fact.”
Based on these findings the trial court dismissed Thomaston’s reconventional demand and Armor’s suit, but cast Armor for costs, including $750.00 in attorney fees. For the reasons which follow we annul and set aside the judgment for $750.00 in attorney fees, but affirm the dismissal of the Armor suit and Thomaston’s reconventional demand.
On appeal Armor contends the $6,000.00 up-front money was a loan and points to the agreement attached as Appendix A to support its contention. Thoma-ston contends the $6,000.00 up-front money was paid to him as an inducement for him to work for Armor rather than Hill. He explains that he signed the agreement couched in the language of a loan because it was beneficial to him from a tax point of view.[2] The trial court accepted Thoma-ston’s version of the up-front money. We cannot say it erred.
Armor gave Thomaston extraordinary perquisites not normally given to other employees. The record contains evidence the $6,000.00 was intended as a recruitment or *546 inducement bonus and thus compensation, in contravention of Armor’s suggestion it was a loan. For example, Weiss sent a letter to Mesarvey explaining all of the special concessions granted to Thomaston, which included “... we sent him $6,000.00 up front via Federal (E)xpress.” There was no mention of a loan. Further, Weiss admitted Armor had never before or since agreed to allow its salesmen such large draws against commissions. More specifically, as to the $6,000.00 up-front money, on direct examination at page 94 of the record Weiss testified:
“Q. That was my next question. Do you normally pay what would be called some sort of incentive payment for people to come work for you?
A. Never.
Q. This is the only occasion you ever paid money up front?
A. Yes.”
Additionally, as observed by the trial court, the so-called loan agreement provided for forgiveness of the loan rather than cash payments.
The record is clear Weiss wanted to lure Thomaston from Armor’s competitors to obtain his expertise and customers for Armor and paid $6,000.00 to get him, and then terminated the agreement before Thoma-ston had an opportunity to perform because of illness.
 In essence the loan agreement con-fected by the parties was a simulation[3] and, as such, an unenforceable sham. Maddox v. Butchee, 203 La. 299, 14 So.2d 4 (La.1943); Hibernia Bank & Trust Company v. Louisiana Avenue Realty Company, 143 La. 962, 79 So. 554 (La.1918). Further, although Armor did not give Thoma-ston a reasonable time to perform before terminating the agreement, the agreement did not contemplate lack of performance due to illness. Therefore, under the circumstances involved here Armor had a right to terminate the agreement for lack of performance. Also, at trial Thomaston admitted all commissions owed to him had been paid. Hence, there is no breach of contract or basis for Thomaston to recover on his reconventional demand.
We next consider the attorney fees awarded to Thomaston. Unless a specific applicable statute or agreement between the parties authorizes the award of attorney fees, the courts cannot assess attorney fees as costs.[4] See R.S. 13:4533 and State ex rel. Landry v. Morning Star Benevolent Association, 15 La.App. 419, 132 So. 159 (1st Cir.1931). Neither the trial court nor the litigants point to a statute or agreement authorizing an award of attorney fees to Thomaston and we know of none.
Accordingly, we annul and set aside that portion of the trial court’s judgment awarding $750.00 as attorney fees to Thomaston and affirm the judgment in all other respects.
ANNULLED AND SET ASIDE IN PART; AFFIRMED IN PART.
*547 [[Image here]]
*548 [[Image here]]

. At trial Armor claimed an additional $1,144.58 representing excess draws, gift certificates, freight charges and other miscellaneous charges.

. Apparently, although the bonus was received in the first year he could spread the income over the entire contract period.

. Civil Code Article 2025 states in part as follows:
"A contract is a simulation when, by mutual agreement, it does not express the true intent of the parties ...”

. See LSA-R.S. 13:4533 which states as follows:
“The costs of the clerk, sheriff, witness’ fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs.